ACCEPTED
03-16-00353-CV
13916912
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/21/2016 9:56:14 PM
JEFFREY D. KYLE
CLERK

### NO. 03-16-00353-CV

## IN THE COURT OF APPEALS
## FOR THE THIRD JUDICIAL DISTICT OF TEXAS
## at AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/21/2016 9:56:14 PM
JEFFREY D. KYLE
Clerk

STEVE VEIGEL,
      Appellant/Defendant

*v.*

TEXAS BOLL WEEVIL ERADICATION FOUNDATION, INC.
      Appellee/Plaintiff

*Appealed from the County Court at Law No. 1
of Travis County, Texas*

## APPELLANT'S REPLY BRIEF

APPELLANT

STEVE VEIGEL, *PRO SE*

105 Quince Street
Hereford, Texas 79045
(806) 231-1008
SVeig@aol.com

# TABLE OF CONTENTS

Page

COVER PAGE ............................................................................................... 1

REPLY TO APPELLEE'S STATEMENT OF FACTS ................................................. 5

REPLY TO APPELLEE'S SUMMARY OF THE ARGUMENT .................................... 7

REPLY TO APPELLEE'S AGRUMENT ISSUE 1 .................................................... 9

REPLY TO APPELLEE'S ARGUMENT ISSUE 2 .................................................. 14

REPLY TO APPELLEE'S ARGUMENT ISSUE 3 .................................................. 17

REPLY TO APPELLEE'S CONCLUSION ............................................................ 18

CONCLUSION AND PRAYER FOR RELIEF ........................................................ 20

CERTIFICATE OF COMPLIANCE ..................................................................... 21

CERTIFICATE OF SERVICE............................................................................. 21

# INDEX OF AUTHORITIES

**Statutes**

TEX. ADMIN. CODE TIT. 4, § 3.502 ........................................................... 13

TEX. ADMIN. CODE TIT. 4, § 3.70 ............................................................. 13

TEX. ADMIN. CODE TIT. 4, § 3.75 .......................................................... 6, 14

TEX. AGRIC. CODE § 74.101 ...................................................................... 5

TEX. AGRIC. CODE § 74.109 .................................................................... 11

TEX. AGRIC. CODE § 74.115 .................................................................. 6, 14

TEX. AGRIC. CODE § 74.127 ...................................................................... 8

TEX. AGRIC. CODE § 74.129 .................................................................... 11

TEX. CIV. PRAC. & REM. CODE § 16.061 ................................................ 4, 7

TEX. TAX. CODE § 171.2515 ...................................................................... 6

TEX. TAX. CODE § 171.252 .................................................................. 6, 15

TEX. TAX. CODE § 171.255 ........................................................................ 6

**Other Authorities**

50 Tex. Jur. 3d Limitation of Actions § 20 .................................................. 11

Texas Boll Weevil Eradication Foundation Self Evaluation Report to
the Texas Sunset Commission ................................................................... 8

**Constitutional Provisions**

TEX. CONST. ART. III, § 52 .......................................................................... 4

TEX. CONST. ART. XVI, § 59 ....................................................................... 4

TEX. CONST. ART. XVI, § 68 .................................................................. 4, 12

To the Honorable Justices of the Third Court of Appeals:

COME NOW, the APPELLANT named herein in the above styled and numbered appeal, and present the Court the following APPELLANT'S REPLY BRIEF to APPELLEE'S BRIEF filed on October 31, 2016.

## SUMMARY OF THE APPELLANT'S REPLY BRIEF

1.     In contradiction to the clear intent of the Texas Legislature and the Texas Constitution, APPELLEE'S BRIEF essentially request this Court to ignore the expressed requirements of Tex. Civ. Prac & Rem. Code § 16.061 and declare APPELLEE to be a qualifying "political subdivision" exempt from any statute of limitations by judicial fiat.

2.     APPELLEE'S BRIEF does not deny that APPELLEE'S formation was only authorized and continued pursuant to Article XVI, Section 68 of the Texas Constitution instead of pursuant to Section 52, Article III, or Section 59, Article XVI, Texas Constitution required of qualifying "political subdivisions" under Tex. Civ. Prac & Rem. Code § 16.061.

3.     APPELLEE'S BRIEF does not cite any legal authority that the Texas Legislature or the Texas Constitution expressly holds or provides that APPELLEE is a "political subdivision" as there is none. Instead, both the governing Texas Agriculture Code ["TEX. AGRI. CODE"] Chapter 74 and Texas Administrative Code Title 4 ["4 TAC"], Chapter 3 have clear

provisions that the Legislature provided that the APPELLEE is a single statewide quasi-government entity and a government unit in certain respects, but is not and does not function as separate local political subdivisions in each eradication zone exempt from statutes of limitations. Unlike political subdivisions, the APPELLEE is expressly "*acting under the supervision and control of the commissioner*" of agriculture and the Texas Department of Agriculture and is not governed by a separate locally elected and/or appointed board for each eradication zone.

4. Quite simply, APPELLEE'S claims to collect debts are barred by the four year limitations statute as the APPELLEE is not exempt for such statutes of limitations.

## REPLY TO APPELLEE'S STATEMENT OF FACTS

5. APPELLEE'S BRIEF'S *Statement of Facts* [Appellee's Brief p. 1-2] does not assert that APPELLEE is a political subdivision or deny that it is instead a quasi statewide government entity/unit acting under the supervision and control of the Texas Department of Agriculture and the Texas Commission of Agriculture pursuant to TEX. AGRIC. CODE § 74.101(a)(1). [APPELLANT'S BRIEF p. 18-22.]

6.    APPELLEE states that "*Veigel Farms, Inc. ("Veigel Farms") is a Texas corporation that farmed cotton for commercial production from 1999 to 2002… and, therefore, was subject to assessments… The Foundation levied assessments against Veigel Farms … as a result of its cotton farming operation…*".  [APPELLEE'S BRIEF p. 1].   However, it is undisputed that APPELLEE only seeks to collect assessments including penalties and interest for the 1999 and 2001 cotton crops which were undisputedly grown during the time from August 27, 1996 until September 26, 2002 wherein Veigel Farms, Inc. had lost its corporate privileges to legally transact any business in Texas pursuant to Tex. Tax Code § 171.2515.  As such, pursuant to Tex. Tax Code § 171.255(b)  Veigel Farms, Inc. is to be treated as a general partnership consisting of Bob and Steve Veigel individually instead of a corporation authorized to do business in Texas including growing cotton in 1999 and 2001.  [APPELLANT'S BRIEF p. 8, 10, and 14]

7.    APPELLEE states "[b]*y letters dated March 8, 2000 and May 20, 2003 the Foundation demanded payment from Veigel Farms … and advised that the Foundation will* [sic] *take legal action…*".   [APPELLEE'S BRIEF p. 1.] However, such letters did not comply with TEX. AGRIC. CODE § 74.115 and TEX. ADMIN. CODE TIT. 4, § 3.75 which requires of right to an administrative hearing concerning assessment of a penalty.

8.    APPELLEE states "*Appellant made his strategic legal decision to direct Veigel Farms not to defend these lawsuits.*" [APPELLEE'S BRIEF p. 2.] However, pursuant to Tex. Tax Code § 171.252, Veigel Farms Inc. was legally prohibited from defending itself from such lawsuits. [APPELLANT'S BRIEF p. 10 and 14.]

## REPLY TO APPELLEE'S SUMMARY OF THE ARGUMENT

9.    APPELLEE does not cite any facts or legal authority that APPELLEE is a political subdivision much less a qualifying political subdivision exempt from some statutes of limitations under Tex. Civ. Prac & Rem. Code § 16.061. APPELLEE (and its board) are state agencies only for purposes of indemnification and exemption from taxation and APPELLEE is a government unit for purposes of immunity. [Appellant's Brief p. 21-22.] APPELLEE clearly is not and does not function as a political subdivision in any respect and does not qualify to be exempt from any statue of limitations otherwise applicable in this Case.

10.    Given that it is undisputed that APPELLEE seeks to recover the 1999 assessment which was due almost 11 years prior to filing this suit and the 2001 assessment which was due almost 6 years prior to filing this suit, APPELLEE'S claims are barred by limitations [APPELLANT'S BRIEF p. 15-16, 18–24.]

11.    Unlike political subdivisions with limited geographical jurisdiction, APPELLEE is a non-profit corporation which serves as the single quasi state wide government entity/unit that has statewide jurisdiction in Texas (and portions of New Mexico) which unlike most political subdivisions is subject to the Texas Sunset Act and has a statutory limited existence. *See* TEX. AGRIC. CODE § 74.127. In APPELLEE'S August 2007 Texas Boll Weevil Eradication Foundation Self Evaluation Report to the Texas Sunset Commission, APPELLEE makes repeated references to its statewide agency jurisdiction including APPELLEE'S answer to question A in Section VII Guide to Agency Programs on report page 21 stating that its location/division was "statewide".

12.    Unlike political subdivisions APPELLEE is constitutionally prohibited from assessing any taxes. [APPELLANT'S BRIEF p. 23-24.] Unlike political subdivisions with local control, APPELLEE is under the expressed control and supervision of the Texas Department of Agriculture and the Texas Agriculture Commissioner who appoints at least 5 of the 21 members of APPELLEE'S board of directors with only 1 member being elected locally from each eradication zone. [APPELLANT'S BRIEF p. 23.]

13.    APPELLEE states "[o]*mission from section 16.061 does not mean the Foundation does not qualify as a political subdivision.*" [APPELLEE'S BRIEF p. 7.]   APPELLEE argues that "[u]*nder Texas law, "including" or "includes" are words of enlargement and not limitation or exclusive enumeration…* ." However, in holding that a plain and literal reading of section 16.061 demonstrates that it does not apply to a municipal utility district as a state agency, the Texas Supreme Court in *Monsanto Co. v. Cornerstones Mun. Util. Dist.,* 865 S.W.2d 937, 939-940 (Tex.1993) stated:

> **The goal of statutory construction is to give effect to the intent of the legislature**. … "Where language in a statute is unambiguous, **this court must seek the intent of the legislature as found in the plain and common meaning of the words and terms used**." … **When the legislature has failed to define a word or term, courts will apply its ordinary meaning**. … **When applying the ordinary meaning, courts "may not by implication enlarge the meaning of any word in the statute beyond its ordinary meaning, and implications from any statutory passage or word are *forbidden* when the legislative intent may be gathered from a reasonable interpretation of the statute *as it is written."* …** **The language of section 16.061 is clear and unambiguous**. The statute applies to "[a] right of action of this *state,* a county, an incorporated city or town, or a school district...." … The legislature has not defined "state" as it is used in section 16.061. Consequently, we apply its ordinary meaning….
>
> **The ordinary meaning of "state," as it used by the Texas courts, envisions an entity** [\*940] **having statewide jurisdiction rather than an entity having local or limited**

**jurisdiction.** In *Guaranty Petroleum Corp. v. Armstrong, 609 S.W.2d 529 (Tex.1980),* we held that a navigation district created pursuant to article XVI, section 59 of the Texas Constitution was a political subdivision of the state, and "not a 'department, board or agency of the state'...." *Id.* at 530. In reaching that conclusion, we recognized that

> [a] **political subdivision differs from a department board or agency of the State. A political subdivision has jurisdiction over a portion of the State; a department, board or agency of the State exercises its jurisdiction throughout the State.** Members of the governing body of a political subdivision are elected in local elections or are appointed by locally elected officials; **those who govern departments, boards or agencies of the State are elected in statewide elections or are appointed by State officials. Political subdivisions have the power to assess and collect taxes; departments, boards and agencies do not have that power**. **Our examination of a number of statutes shows that the legislature has consistently recognized these distinctions between departments, boards or agencies on the one hand and political subdivisions on the other**. *Id. at 531* (footnote omitted)

This interpretation of "state" comports with the legislature's ordinary use of the word. State government is defined generally in terms of the executive, legislative, and/or judicial branches, **excluding entities with limited jurisdiction**.

**To read "political subdivision" into "state" would by implication enlarge "state," and section 16.061, beyond their plain and ordinary meaning.** Such implication is forbidden when, as here, the legislative intent may be determined from a reasonable interpretation of the statute as written. Applying the ordinary meaning of "state" to section 16.061, we conclude that it was the intent of the legislature to include within "state" only those entities having statewide jurisdiction. Therefore, we hold that section 16.061 does [*941] not apply to municipal utility districts such as Cornerstones. [emphasis added]

14. With knowledge of and subsequent to *Monsanto Co. v. Cornerstones Mun. Util. Dist.* and *Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen,* 952 S.W.2d 454 (Tex.1997), section 16.061 was amended in 1997 to expressly include "or a political subdivision of the state, including" "a municipal utility district" and ", or an entity created under    Section 52, Article III, or Section 59,  Article XVI, Texas Constitution" and  the TEX. AGRIC. CODE CHAPTER 74 was amended.  However, the legislature did not and has not made any effort to include APPELLEE in section 16.061 as a political subdivision or otherwise expand APPELLEE'S expressly limited status as a "state agency" or "government unit" under TEX. AGRIC. CODE § 74.109 or TEX. AGRIC. CODE § 74.129.

15. As stated in 50 Tex. Jur. 3d Limitation of Actions § 20, the plain section 16.061 does not apply to all political subdivisions just because of the word "including".

> In addition to rights of actions brought by the State, a right of action of a political subdivision of the State, including a county, an incorporated city or town, a navigation district, a municipal utility district, a port authority, an entity acting under a statutorily specified chapter of the Transportation Code, a school district, or an entity created under statutorily specified constitutional provisions, is generally not barred by the statutory provisions governing limitations of actions. By the foregoing statute, the Legislature has exempted counties **and certain, statutorily specified political subdivisions and entities**—unlike ordinary litigants—from the limitations

defense in appropriate cases. [emphasis added]

16. The intent of the legislature as found in the plain and common meaning of the words and terms used. Applying the ordinary meaning, courts may not by implication enlarge the meaning of any word in the statute beyond its ordinary meaning, and implications from any statutory passage or word are *forbidden* when the legislative intent may be gathered from a reasonable interpretation of the statute *as it is written.* The language of section 16.061 is clear and unambiguous that it does not apply to the APPELLEE even if the APPELLEE was nevertheless a political subdivision created under Section 52, Article III, or Section 59, Article XVI, Texas Constitution, which it is not. APPELLEE was created under TEX. CONST. ART. XVI, § 68. [APPELLANT'S BRIEF p. 20.]

17. The APPELLEE is expressly only a quasi government entity and governmental unit for specially defined purposes whose jurisdiction is statewide and not limited by a geographical region of each eradication zone. There is one statewide foundation and one board that governs the entire state under the expressed control and supervision of the Texas Department of Agriculture and the Texas Agricultural Commission. There is not a foundation and locally elected or appointed governing board for each

eradication zone required for each foundation to be considered or function as a political subdivision.

18. APPELLEE tries to equate itself to the El Paso County Juvenile Board held to be a political subdivision because the juvenile board's ability to impose fees not taxes under the Texas Family Code claiming that the APPELLEE has the authority to similarly impose assessments as fees. [APPELLEE'S BRIEF p. 12.] However, unlike a juvenile board or other political subdivision, APPELLEE has no statutory authority to "impose" taxes, assessments or penalties. APPELLEE can only make recommendations of assessment rates to the Texas Agriculture Commission through the Texas Department of Agriculture. TEX. ADMIN. CODE TIT. 4, § 3.502 expressly provides:

> (a) Each year, the **foundation shall recommend assessment rates**, the date a notice of assessment will be sent, and assessment due dates for each active eradication zone **to the department for consideration by the commissioner**.
>
> (b) **The Commissioner will review these proposals and determine the assessment rates** and due dates for each zone. [emphasis added]

19. TEX. ADMIN. CODE TIT. 4, § 3.70 provides:

> **The Code, § 74.113, provides the foundation with the authority to collect assessments** for each eradication zone as part of the foundation's duties. The Code, § 74.121, provides that each person within an active eradication zone growing cotton shall furnish to the foundation, upon request, information

concerning the size and location of all commercial and noncommercial cotton. **The Code, § 74.118, provides the department with the authority to require participation in an established eradication program.** The Code, § 74.115, provides the department with the authority to place a lien on cotton produced and harvested that year from acreage that is subject to an assessment that is due and unpaid. **The Code, § 74.115, also provides the department with the authority to assess administrative penalties for failure to pay an assessment when due,** and the Code, § 74.118, provides the department with the authority to assess administrative penalties for failure to comply with department rules regarding participation in cost sharing and acreage reporting. The Code, § 74.116, provides the department with the authority to establish criteria for exemption from penalties assessed under the Code, § 74.115. [emphasis added]

## REPLY TO APPELLEE'S ARGUMENT ISSUE 2

20. APPELLEE, without citing any legal authority, asserts that APPELLANT's laches defense fails solely because of actions by APPELLANT with knowledge of impending legal and not actions by the APPELLEE. [APPELLEE'S BRIEF p. 16-17.] However, APPELLEE does not deny that it does not have the records or other evidence to explain how or why it or the Texas Department of Agriculture did not enforce its statutory lien or otherwise actually received timely payment of the assessments from Veigel Farms Inc.'s sale of cotton with checks jointly paid to the Texas Department of Agriculture. [APPELLANT'S BRIEF p. 11, and 17.] APPELLEE does not deny that relevant evidence and documents in the possession and control of the

APPELLEE, Texas Department of Agriculture, the Plains Cotton Cooperative Association, Ag Services of America, Inc., and Ag Acceptance Corporation have also been lost or destroyed during the approximate 15 year delay in APPELLEE prosecuting this Case. [APPELLANT'S BRIEF p. 11-12, 14, 16-17.]

21.     APPELLEE has apparently also lost any record or evidence to show that it complied with TEX. AGRIC. CODE § 74.115 and TEX. ADMIN. CODE TIT. 4, § 3.75 which requires of right to an administrative hearing concerning assessment of a penalty.

22.     APPELLEE states Appellant "*... made his "strategic legal decision" to direct Veigel Farms not to defend the lawsuits....*" [APPELLEE'S BRIEF p. 16.] However, pursuant to Tex. Tax Code § 171.252, Veigel Farms Inc. was legally prohibited from defending itself from such lawsuits. Furthermore, there is no evidence showing or otherwise indicating that APPELLANT had any knowledge of any impending legal action against him personally prior to the filing of this suit on August 3, 2010 or that APPELLANT was aware that Veigel Farms Inc.'s corporate privileges had been forfeited until he filed documents to reinstate with the Secretary of State in September 2002.

23.     APPELLEE has offer no reasonable justification for its almost 15 year delay in prosecuting this Case or any evidence that APPELLANT did not

change his position to his detriment and is not prejudiced by APPELLEE'S unreasonable delay.

24. APPELLEE contends that APPELLANT submitted no authority supporting his contention of constructive notice that Veigel Farms Inc. had lost its corporate privileges and that APPELLEE did not have actual knowledge of such until May 19, 2010. However, there is no evidence that APPELLEE did not have actual knowledge of Veigel Farms Inc.'s corporate forfeiture long before 2010.

25. APPELLANT cited that Veigel Farms Inc.'s corporate status was a matter of public record that APPELLEE had access which serves as a legal basis for such contention. [APPELLANT'S BRIEF p. 10, 12, 16, and 26.] As APPELLEE surely knows, "constructive notice" or "constructive knowledge" are common legal terms for notice or knowledge implied or imputed by the law with regard to facts shown to the world properly recorded as matters of public record.

26. Although APPELLANT has not found a case holding that APPELLEE had a legal duty to check Veigel Farms Inc.'s corporate status prior to making the assessments at issue as there involving *in rem* actions where there is a legal duty to check public deed and probate records, it is not uncommon business and legal practice in the context of extending credit or contracting

with entities. For example, creditors commonly conduct lien and corporate searches of the Secretary of State's public records before extending credit ensuring that the corporate debtor is in good standing and allowed to conduct business in Texas. Given that the APPELLEE relies on cotton acres planted as reported to the Farm Service Agency, it is not an unreasonable burden for the APPELLEE to similarly search the Secretary of State's online records to confirm a cotton grower's good standing as a proper party prior to be given notice of assessments by the APPELLEE. Had APPELLEE taken such reasonable legal precautions, it could not and should not have accessed Veigel Farms Inc. as a "cotton grower".

## REPLY TO APPELLEE'S ARGUMENT ISSUE 3

27. APPELLEE contends that APPELLANT failed to present and brief relevant material facts or argument or authority of his waiver defense. [APPELLEE'S BRIEF p. 23.] However, there is un-contradicted evidence in the record that APPELLEE or the Texas Department of Agriculture were instructed by APPELLANT to receive jointly payable checks for the 1999 and 2001 cotton sales in a sufficient amount to timely satisfy the respective assessments due at the time and that such checks must have been endorsed by the APPELLEE or the Texas Department of Agriculture as the checks were

apparently cashed. Yet, apparently the APPELLEE or the Texas Department of Agriculture did nothing to protect their statutory security interest in the proceeds or show the assessments timely satisfied. [CR 198-199, 204-206]

28.     There is nothing in the record to contradict the likely reasonable possibility that the Texas Department of Agriculture or APPELLEE actually received and endorsed the assessment payment from such joint checks but somehow failed to have the APPELLEE give the appropriate credit to satisfy the assessments.  Such documents and records of this transaction have apparently been lost or destroyed by the APPELLEE, the Texas Department of Agriculture, Veigel Farms Inc., APPELLANT, or other third parties over the 15 year delay of Appellee's prosecution of this Case.  Whether it is viewed waiver, negligence, release, failure to mitigate, or something else there is a least a dispute of material facts in the record concerning the endorsement of the jointly payable checks and the actual receipt/application of such funds sufficient to preclude summary judgment.

## REPLY TO APPELLEE'S CONCLUSION

29.     APPELLEE makes a partial quote apparently from 50 Tex. Jur. 3d *Limitations of Actions* § 20. [APPELLEE'S BRIEF p. 23]  The next sentence therein indicates there are exceptions which are applicable in this Case

stating "*Therefore, the State is not bound by any statute of limitations **unless** that statute expressly provides that it applies to the State ...*".  In this Case, APPELLEE admits that its is not a state agency exempt from some limitations but rather tries to argue that it should be exempt from some limitations statutes pursuant to section 16.061 merely because it claims that it is a political subdivision and that all political subdivisions are exempt under section 16.061.

30.    There is simply no statute, regulation, or court case that supports APPELLEE'S contention that it is a political subdivision in form or function in any context including exemption from some limitation statutes pursuant to section 16.061.  APPELLEE'S jurisdiction is clearly statewide and not limited to a local geographical area and is under the control and supervision of the Texas Department of Agriculture and its Commissioner instead of a locally elected or appointed board in each eradication zone. APPELLEE does not even set or impose its own assessment rates and penalties for non-payment.  If the Legislature  ever intended APPELLEE to be a political subdivision or any other type of quasi government entity or governmental unit exempt from some limitations pursuant to section 16.061, it could have clearly done so, but it has not.

## CONCLUSION AND PRAYER FOR RELIEF

For these reasons stated herein above, APPELLANT prays that the Court that determine that the Trial Court erred in reinstating the Case to the Docket and subsequently denying APPELLANT'S MFSJ and granting APPELLEE'S MFSJ and reverse and rendered that APPELLEE should take nothing and immediate file releases of record of its judgment in this Case and any other relief in law or equity that APPELLANT may be entitled.

Respectfully submitted,

APPELLANT:


/S/ STEVE VEIGEL_____
STEVE VEIGEL, PRO SE

105 Quince Street
Hereford, Texas  79045
(806) 231-1008
SVeig@aol.com

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word 2003 using 14 point New Times Roman font and contains 3,678 words, as determined by Microsoft Word 2003 word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

/S/ *STEVE VEIGEL*_____
Steve Veigel, *pro se*

## CERTIFICATE OF SERVICE

I hereby certify that when a true and correct file marked copy of this e-filed document is available to me, it will be e-mailed that day to APPELLEE'S counsel as follows:

Mr. Matt Dow at MDow@JW.com
Mr. Andrew J. McKeon at AMcKeon@JW.com
Jackson Walker L.L.P
100 Congress Avenue, Suite 1100
Austin, Texas 78701

/S/ *STEVE VEIGEL*_____
Steve Veigel